UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.

Lyle Nierenz,

    Defendant.

Case No. 20-cr-101 (DWF/DTS)

**REPORT AND RECOMMENDATION**

Defendant Lyle Nierenz is charged with multiple counts of preparing and filing fraudulent tax returns. He moves to suppress all evidence seized during a search of his residence, arguing the search warrant was not supported by probable cause and was not reasonably particularized. Mot. Suppress Evid. 1, Dkt. No. 37 (Evid. Mot.). Nierenz alleges the warrant was "so defective that it could not be relied upon in good faith." Evid. Mot. 1. Nierenz has also moved to suppress inculpatory statements he made to law enforcement during the search, alleging the interaction was custodial, involuntary, and lacked a *Miranda* warning. Mot. Suppress Admis. 1, Dkt. No. 38 (Admis. Mot.). For the reasons discussed below, the Court recommends that both motions be denied.

## FINDINGS OF FACT

### I. Criminal Allegations

A grand jury indicted Nierenz for running a fraudulent tax preparation business out of his home in Ramsey, Minnesota. Indictment ¶ 1a, Dkt. No. 1 (Ind.). The government alleges that Nierenz, without his clients' knowledge, would deliberately inflate his clients' deductions, thereby decreasing their tax liability and increasing their tax refund. Ind. ¶ 1b.

He would then file those false tax returns electronically with the Internal Revenue Service (IRS), and divert to his own account all or a portion of the inflated refunds. Ind. ¶ 1c. As part of the scheme he allegedly provided his clients with a different tax return than the filed return so as to conceal from his clients the skimming operation. *See* Pl.'s Resp. Ex. A, at 7, Dkt. No. 39-1. Put simply, Nierenz filed a false return with the IRS, skimmed the excess refund off the top, and gave his clients a different tax return corresponding to their refund. Ind. ¶ 1b–c. From this Nierenz allegedly acquired "approximately $336,000" over five years, which he did not report as income, thereby avoiding paying approximately $56,000 in income taxes. Ind. ¶ 3, Pl.'s Resp. 2.

## II. The Warrant for Nierenz's Residence

### A. The Warrant Application

Special Agent Jeffrey Stotko, a Treasury Inspector General for Tax Administration, applied for a warrant to search Nierenz's residence in February 2020. Pl.'s Resp. Ex. A, at 1, Dkt. No. 39-1. In his supporting affidavit SA Stotko described his duties, his training and experience, and his personal knowledge of the investigation into Nierenz's criminal offenses. Pl.'s Resp. Ex. A, at 2–25, Dkt. No. 39-1.

His affidavit supplied detailed information to establish probable cause for the warrant. It included information from several of Nierenz's clients who provided tax returns they had received from Nierenz that differed from the returns in their name with the IRS. These filed returns generated greater refunds than the claimed refunds reflected in the returns Nierenz had given to the clients. SA Stotko's affidavit supplied facts showing that the refunds generated by the filed returns were deposited into bank accounts in Nierenz's or his girlfriend's name, all of which occurred without the clients' knowledge and contrary

2

to their belief. The affidavit contained information that linked several of the filed returns to an IP address associated with Nierenz's home from which he admittedly ran his tax preparation business. Finally, the affidavit contained information directly from Nierenz himself that he not only operated his tax preparation business out of his home but that he kept there several years' worth of client tax records, as well as several electronic devices he used to prepare and file the returns.

### B. Warrant Scope & Execution

After reviewing SA Stotko's application for a search warrant, Magistrate Judge Elizabeth Cowan Wright found "the affidavit[] . . . establish[ed] probable cause to search and seize" Nierenz's property. Pl.'s Resp. Ex. B, at 1, Dkt. No. 39-2. The warrant authorized the seizure of several categories of items, including client files and records, personal and business financial documents, and computer and electronic devices. Pl.'s Resp. Ex. B, at 4–9, Dkt. No. 39-2. Though items to be seized within each category were many, the categories themselves were specific. *See id.*

The government executed the warrant on Nierenz's residence on February 27, 2020. *See* Pl.'s Mem. Ex. 1, at 2, Dkt. No. 48-1. It seized documents including tax returns, client records, and financial records and electronic devices including computers, thumb drives, software, and cell phones. *See* Pl.'s Mem. Ex. 1, at 3–7, Dkt. No. 48-1.

## CONCLUSIONS OF LAW

The Fourth Amendment to the United States Constitution guarantees a person's right "against unreasonable searches and seizures." U.S. Const. amend. IV. It commands that "no Warrant shall issue, but upon probable cause . . . particularly describing the place to be searched, and the persons or things to be seized." *Id.* To satisfy the probable cause

3

requirement, "there must be evidence of a nexus between the contraband and the place to be searched . . . ." *United States v. Tellez*, 217 F.3d 547, 549–50 (8th Cir. 2000). The particularity requirement prevents general searches by "limiting the authorization to search to the specific areas and things for which there is probable cause to search . . . ." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987).

Nierenz challenges the warrant, alleging it lacked both probable cause and particularity. Def.'s Mem. 1–2, Dkt. No. 47. But because the warrant was amply supported by probable cause, was sufficiently particularized and demonstrated an adequate nexus between the probable cause and the items to be seized, the Court recommends that Nierenz's motion to suppress be denied.[1]

## I. Probable Cause

Nierenz argues that the warrant authorizing the search of his home was so constitutionally deficient the evidence seized during its execution must be suppressed. "Whether probable cause to issue a search warrant has been established is determined by considering the totality of the circumstances. If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has been established." *United States v. Notman*, 831 F.3d 1084, 1088 (8th Cir. 2016). Judges issuing search warrants may "draw reasonable

---

[1] Nierenz's post-hearing briefing addresses only the validity of the warrant to search his residence. Def.'s Mem., Dkt. No. 47. Though he initially requested that this Court conduct a four-corners review of multiple warrants, Evid. Mot. 1, Dkt. No. 37, and suppress statements Nierenz made to law enforcement, Admis. Mot. 1, Dkt. No. 38, he has made no arguments regarding those issues nor demonstrated any basis on which this Court should suppress that evidence.

inferences from the totality of the circumstances" when reading the warrant application affidavit to determine whether probable cause exists. *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (quoting *United States v. Alexander*, 574 F.3d 484, 490 (8th Cir. 2009)). Reviewing courts must afford "great deference" to the probable cause determination of the judge who issued the warrant and should resolve even "doubtful or marginal cases" in favor of a warrant's validity. *United States v. Butler*, 594 F.3d 955, 962 (8th Cir. 2010) (citation omitted); *United States v. Ventresca*, 380 U.S. 102, 109 (1965). So long as the issuing judge had a "substantial basis" for concluding that the "search would uncover evidence of wrongdoing," the Court must uphold the probable cause determination. *United States v. Horn*, 187 F.3d 781, 785 (8th Cir. 1999).

Special Agent Stotko's sworn affidavit establishes ample probable cause for the warrant to search Nierenz's house. The allegations were not conclusory, but in great detail SA Stotko's affidavit laid out the link—or nexus—to Nierenz and the items sought in his residence. The affidavit articulated how falsified tax returns were filed from Nierenz's IP address. *E.g.*, *United States v. Green*, 954 F.3d 1119, 1123 (8th Cir. 2020) (finding probable cause existed to search defendant's residence from link to defendant's IP address). It described Nierenz's statement to IRS investigators that he is a sole proprietor who filed his clients' tax returns from his home. *E.g.*, *United States v. Renner*, No. 08-cr-283(1) (DWF/SRN), 2008 WL 5401667, at *7 (D. Minn. Dec. 22, 2008) (finding probable cause existed from likelihood that target kept financial and tax information in his residence). The affidavit explained that investigators spoke to Nierenz's clients who told them the tax forms Nierenz gave them conflicted with the returns filed in their names. In short, SA Stotko's affidavit provided an array of evidence and investigative findings that

5

spanned years of Nierenz's alleged actions and depicted a vivid picture of Nierenz's scheme. From this, Magistrate Judge Cowan Wright, a neutral and detached judicial officer disengaged from the "competitive enterprise of ferreting out crime," found probable cause to issue the warrant. *Johnson v. United States*, 333 U.S. 10, 13–14 (1948).

This Court concurs. Taken in its entirety the affidavit supports the following facts: (1) Nierenz filed false tax returns in the names of his clients; (2) these tax returns generated inflated refunds, which Nierenz siphoned off into bank accounts he controlled; (3) his clients were unaware that Nierenz had prepared and filed false returns in their names; (4) Nierenz prepared several hundred such returns and did so at his house, where he also kept records relating to his tax preparation activities; (5) Nierenz used several electronic devices—which he also kept at his residence—to prepare the returns. The affidavit contains factual details—not mere conclusions—which define a clear nexus between the probable cause that a crime has occurred and that evidence of that crime would be found in the place to be searched.

Nierenz wishes to frame the matter differently, arguing that "the warrant contain[ed] little more than unsupported conclusory allegations about an alleged illegal tax return business, and little to support the conclusion that any specific documents or items of evidentiary value would be found at Mr. Nierenz's residence." Def.'s Mem. 1, Dkt. No. 47. The warrant was not based on "pure speculation that evidence of a crime would be found at [Nierenz's] house, [or] that there might be private client files that may contain evidence of some tax irregularities." Def.'s Mem. 4, Dkt. No. 47. Nierenz's clients confirmed the scheme; Nierenz himself confirmed the likely presence of records in his house relating to the scheme. Nierenz also contends that failing to specify the names of specific client tax

6

files renders the warrant constitutionally invalid. Def. Mem. 6-7, Dkt. No. 47. This argument is without legal foundation because an "affidavit need not identify specific individual tax returns at issue." *United States v. Brown*, No. 19-cr-110 (ADM/ECW), 2019 WL 7838276, at *12 (D. Minn. Sept. 20, 2019).

It appears Nierenz is merely incanting buzzwords, like "conclusory," "generalized," and "speculation" in his brief in hopes this incantation will strengthen his legal argument or detract from the many facts supporting the affidavit. It does not. The robust affidavit, which contains IRS investigative findings, descriptions of Nierenz's tax filings, summaries of interviews with Nierenz's clients, and direct IP address links to Nierenz's home, provides far more than a fair probability that agents would find evidence of a fraudulent tax scheme at Nierenz's home.

## II. Particularity

Nierenz argues that "the breadth of the [warrant's particularity] description outruns the probable cause supporting the warrant." *United States v. Clark*, 638 F.3d 89, 94 (2d Cir. 2011). Essentially, Nierenz suggests the scope of items to be seized is so sprawling that the warrant is effectively a "broad based generalized warrant[]." Def.'s Mem. 7, Dkt. No. 47.

Courts reviewing challenges to a warrant's particularity consider factors like "the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011). A warrant satisfies the Fourth Amendment's particularity requirement when it is "sufficiently definite to enable the searching officers to identify the property authorized to be seized." *United States v. Sigillito*, 759 F.3d 913, 923 (8th Cir. 2014). That

means that a warrant should state the items to be seized with enough detail to leave "nothing . . . to the discretion of the officer executing the warrant." *Andresen v. Maryland*, 427 U.S. 463, 480 (1975) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927).

A warrant does not lack particularity merely because it authorizes the seizure of many items. Particularity is satisfied when the officers executing the warrant can determine what the warrant authorizes them to seize. Even warrants that authorize a search for many things or of multiple areas or the seizure of numerous items can still be constitutionally valid so long as probable cause supports seizure of those items. *See, e.g.*, *Andresen*, 427 U.S. at 480 n.10 (warrant authorizing seizure of litany of general business records sufficiently particular given complex nature of scheme under investigation); *Sigillito*, 759 F.3d at 922–24 (warrant authorizing seizure of "records of all personal and business expenditures" sufficiently particular because specificity difficult given expansive reach of fraud); *United States v. Summage*, 481 F.3d 1075, 1079–80 (8th Cir. 2007) (warrant authorizing seizure of broad category of media and equipment sufficiently particular given officers could not have known what format or on which device they would find the evidence). Invalidity for lack of particularity arises only from general warrants which force officers to interpret an ambiguous or non-specific authorization to search or seize.[2] *See Steele v. United States*, 267 U.S. 498, 503 (1925) (holding a warrant

---

[2] But even if a warrant lacks particularity, courts have recognized exceptions to the requirement for businesses "permeated with fraud." Under this exception, probable cause exists where "the entire business is merely a scheme to defraud or . . . all of the business's records are likely to evidence criminal activity." *United States v. Kow*, 58 F.3d 423, 427–28 (9th Cir. 1995); *e.g.*, *Sigillito*, 759 F.3d at 924 (warrant authorizing seizure of most records in law firm sufficiently particular because probable cause established business was permeated with fraud).

is sufficiently particularized if officers "can with reasonable effort ascertain and identify the place intended").

The search warrant at issue here describes with sufficient particularity the items to be seized. While the categories are broad and the items to be seized are many, the complexity of Nierenz's scheme, its half-decade duration, and the nexus to the records and electronic devices kept in his home supports the breadth of the warrant's authorization. Each category for which the warrant authorizes seizure displays a concrete link to Nierenz's scheme. For example, "[c]lient files, records of client's names and addresses, records of client[] payments, and/or copies of client income tax returns" sensibly relates to the fraudulent documents Nierenz allegedly submitted to the IRS, and serve as a memorial of his actions. "Books, manuals, brochures, and notes relating to taxation" does not permit seizure of all reading materials, but only those items with a material link to Nierenz's fraudulent tax preparation business. While some categories may result in the seizure of items with little or no evidentiary value (for example, seizing "[a]ny" computer equipment and electronic storage devices may embrace a thumb drive of vacation photos), this breadth is a result of the nature of Nierenz's business and the manner in which he ran it (*i.e.*, running his business out of his home). It was Nierenz who doctored and filed tax returns from his home, and Nierenz who told agents "he has used multiple computers to prepare tax returns" over the years. Ex. A at 9, Dkt. No. 39-1. It was Nierenz who told agents he kept three years of client records at his house, which could have been in any room, in hard copy or digital, or on a local or peripheral hard drive. Ex. A at 8, 11, 17; Dkt. No. 39-1. The totality of the circumstances establishes the reasonableness of the search warrant.

## CONCLUSION

Though the search warrant at issue authorizes the seizure of numerous items from Nierenz's residence, the warrant's validity is assessed not from the volume of items to be seized but on the reasonableness of that volume in light of all the circumstances. Because the warrant permitted the government to seize particular categories of items, which categories were supported by ample probable cause, the warrant was valid.

## RECOMMENDATION

For these reasons, the Court RECOMMENDS:

1. Defendant Lyle Nierenz's motion to suppress evidence (Dkt. No. 37) be **DENIED**; and

2. Defendant Lyle Nierenz's motion to suppress statements (Dkt. No. 38) be **DENIED**.

Dated: December 4, 2020                    ___s/David T. Schultz_____
                                           DAVID T. SCHULTZ
                                           United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to the magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).